# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **KEVIN LaSALLE** | **CIVIL ACTION NO. 3:11-cv-1322** |
| **LA. DOC #495636** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **ISAAC BROWN, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, plaintiff Kevin LaSalle filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 11, 2011. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Morehouse Parish Detention Center (MPDC). Plaintiff complains that the defendants, Warden Isaac Brown, Assistant Warden Brad Fife, and Mail Officer Kathy Harrell, have interfered with his right of access to the courts because they have "[d]isposed of or restricted [or] misplaced [his] outgoing legal forms..." which include post-conviction pleadings as well as administrative remedies grievances. He prays for punitive, nominal, and compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Background*

#### *1. The Original Complaint*

In his original complaint, plaintiff alleged that he was arrested on July 7, 2008, and

convicted of some unspecified felony offense on March 24, 2009. [Doc. 1, ¶3(A)] He implied that his release date was October 26, 2010 [Doc. 1, p. 4; Doc. 5, ¶V]; however, he did not explain why he remains in custody.  According to plaintiff, on April 8, 2011 he "sent legal documents out that haven't [reached] [their] destination..."  On some unspecified date he corresponded with the Cameron Parish Clerk of Court and inquired about the status of an application for post-conviction relief he claimed to have filed. In a letter post-marked June 10, 2011, the Clerk of Court advised that neither the Clerk nor the Judge had any record of plaintiff's application. [Doc. 5-1, pp. 1-2]

Plaintiff submitted an Administrative Remedies Grievance on June 13, 2011, in which he complained that "authorities here at this facility assigned to the task of distributing out going mail are not delivering effective postal service. The outgoing mail goes through multiple channels before it reaches an official post office box." The grievance was rejected as follows, "The mail your complaint's about was sent out May 17, 2011." [Doc. 2, p. 3]

### 2. Amend Order and Amended Complaints

On August 30, 2011, plaintiff was ordered to amend his complaint.  Among other things, he was directed to "... amend his complaint to demonstrate that he was in fact denied his right of access to the courts and that this denial prejudiced him.  At the very least, he should provide a detailed description of the reason for his incarceration – the nature of the crime he was convicted of, the sentence that was imposed, whether or not he appealed his conviction, and the exact nature of the post-conviction claims he wishes to file. He should also provide the relevant dates and state whether he attempted to re-file his post-conviction application and if so, the status of the application." [Doc. 8]

On September 7, 2011, he submitted an amended complaint. [Doc. 9] This somewhat

2

disjointed pleading indicates that plaintiff was convicted of possession of controlled dangerous substances and possession of stolen things on March 24, 2009. He implied that he remains in custody because he does not have a local address.  In March he requested copies of transcripts from the District Court of conviction and in early April he received the requested documents along with the forms needed to seek post-conviction relief.  Shortly thereafter he apparently received the forms, prepared his application for post-conviction relief, and gave them to MPDC authorities for mailing. Two months later, in early June,  plaintiff wrote a letter to the Cameron Parish Clerk of Court inquiring about the status of his application. Shortly thereafter he was advised that no pleadings had been received.  Plaintiff then submitted a grievance to the prison authorities on June 13.  Plaintiff contends that he received no response. Thereafter, as is noted elsewhere, plaintiff submitted a second grievance and  prison authorities responded to the grievance indicating that some item of mail was sent to the Cameron Parish Clerk of Court on June 20, 2011.

Plaintiff alleged that he did not appeal his Cameron Parish conviction and that the reason he sought post-conviction relief he was "being held over my release [date]..." He also claimed that upon discovering that his original application for post-conviction relief was not received by the Cameron Parish authorities, he "... didn't apply again for another post conviction [due] to this incident which expired my 2 year [expiration] date to file the post conviction..."  Accordingly, plaintiff now suffers "emotional, mental, trauma, and anguish."

Plaintiff again attached copies of the Department's Master Record dated November 16, 2009. According to the document, his good time release date was October 26, 2010 and his full term release date is July 7, 2013.  These calculations were apparently based on the fact that on March 24, 2009 he was sentenced to serve concurrent 5 year sentences following his convictions for possession

of cocaine and illegal possession of stolen property. The Master Record also reveals that he had been previously convicted of possession with intent to distribute cocaine on April 25, 2006, and placed on probation; however, based on the new felony convictions, his probation was revoked and he was ordered to serve an additional 5 years. It does not appear that this sentence was made concurrent with his other two sentences. [Doc. 9-1, p. 1]

Plaintiff also provided another copy of the Motion for Transcripts filed on March 30, 2011, in the Thirteenth Judicial District Court. In that motion plaintiff claimed that his guilty plea was invalid and therefore unconstitutional. [Doc. 9-1, p. 2-4]

On September 16, 2011, plaintiff submitted a letter requesting information concerning the status of his federal complaint. [Doc. 10]

On September 19, 2011, he submitted a second amended complaint.  He complained that, when he complained, defendant Brown walked away from him in the midst of a conversation concerning plaintiff's legal claims.  He also complained that Brown was liable because he has command over all the mail staff. He complained that Fife was negligent and an "accessory."  He complained that Harrell was also negligent and very rude. He again asserted that he did not attempt to refile his application for post-conviction relief because the 2 year period of limitations established by Louisiana law had expired. [Doc. 11] Plaintiff again provided copies of the Master Record [Doc. 11-1, p. 1] and the Motion for Transcripts [Doc. 9-1, pp. 2-4]

On September 27, 2011, plaintiff submitted another letter indicating that he had received correspondence from the Clerk of Court. He also submitted a copy of the administrative remedies procedure grievance he submitted in July 2011 in which he complained that his application for post-conviction relief which was to be sent to the Court in Cameron Parish, while delivered to the proper

4

authorities, was never received by the Cameron Parish officials. He accused the prison authorities

of disposing and misplacing his legal mail.  On July 18, 2011, defendant Harrell responded to the

grievance as follows, "On 6/20/11 mail was sent to Cameron Parish [Clerk of Court], P.O. Bx 549,

Cameron, LA 70631." [Doc. 12-1, p.1]

### Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or

employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the

complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim

upon which relief can be granted, or seeks monetary relief from a defendant who is immune from

such relief. 28 U.S.C. §1915A; 28 U.S.C. §1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th

Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears

that no relief could be granted under any set of facts that could be proven consistent with the

allegations of the complaint. Of course, in making this determination, the court must assume that all

of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d

480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as

frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th

Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad

discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge*

*No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has submitted sufficient information to resolve his access to court claims; further amendment would serve no useful purpose.

### 2. Access to Courts

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d

718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).  Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821;  *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

The pleadings and exhibits demonstrate that with apparently one exception, plaintiff has encountered no problems with transmitting documents to or receiving documents from this court or any other.  Indeed, plaintiff sent a Motion for Transcripts to the Cameron Parish Clerk of Court; the motion was mailed on March 24, 2011 and received on March 30. [Doc. 9-1, pp. 2-4] That Court apparently granted his motion and within a few days sent plaintiff the transcript he requested along with the form for seeking post-conviction relief. According to plaintiff, he completed the application and entrusted it to prison authorities for mailing to the Cameron Parish Clerk of Court in early April, 2011.  He then wrote a letter to the Clerk in June 2011 requesting a status update; that letter was apparently received because on June 20, 2011, the Clerk advised plaintiff that the original pleading had not been received. [Doc. 5-1, pp. 1-2] Thereafter, the records of this Court indicate that plaintiff was able to submit his original complaint and his application to proceed *in forma pauperis* on July 11, 2011 [Docs. 1, 2, and 3]; he apparently received the original memorandum order of July 27, 2011 [Doc. 4] because he responded to the order on August 3. [Docs. 5-6] The order granting him *in forma pauperis* status [Doc. 7] was mailed to him and apparently received shortly thereafter. Likewise, the

memorandum order directing further amendment was mailed to him on August 30, 2011 [Doc. 8] and apparently received shortly thereafter because plaintiff responded with amended complaints, exhibits, and correspondence on September 7, 2011 [Doc. 9], September 16, 2011 [Doc. 10], September 19, 2011 [Doc. 11] and September 27, 2011 [Doc. 12].  In light of the foregoing, it would appear unlikely that prison authorities interfered with the transmission of plaintiff's application for post-conviction relief; a more likely scenario suggests that the pleading was simply lost in the mail.[1]

Nevertheless, even if the pleading in question was lost due to the fault of the defendants, that does not end the inquiry.   In order to establish a Constitutional violation, plaintiff must assert and prove that the failure to deliver his pleadings was intentional and not inadvertent or due to negligence.

Further, even if plaintiff could establish the intentional fault of the defendants with respect to the pleading, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must also "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury"  is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  In other words, plaintiff, at the very least, must show that he was prevented from filing a non-frivolous pleading.  This he has failed to do.

Indeed, it is still unclear what claim or claims were raised in the lost application for post-

---

[1] As a matter of fact, plaintiff's Grievance dated June 13, 2011 which complained that "authorities here at this facility assigned to the task of distributing out going mail are not delivering effective postal service" was rejected as follows, "The mail your complaint's about was sent out May 17, 2011." [Doc. 2, p. 3]

conviction relief. When plaintiff filed his motion for transcripts, he argued that he needed the transcripts to attack his guilty plea as involuntary. [Doc. 9-1] However, in his amended complaint and elsewhere he alleged that he submitted his application for post-conviction relief "... for being held over my release [date]..." [Doc. 9, p. 2] The application for post-conviction relief was clearly unavailable to attack the computation of plaintiff's sentence.[2] Indeed, under Louisiana law, prisoners who contest the computation of their sentence, discharge, parole, or good time dates, must file a civil action in Louisiana's Nineteenth Judicial District Court, East Baton Rouge Parish, and may not seek such relief in an application for post-conviction relief. See La. R.S.15:571.15. In other words, if plaintiff was seeking judicial review of the computation of his sentence, he could not raise such a claim in an application for post-conviction relief filed in Cameron Parish and therefore, the loss of the pleading resulted in no prejudice.

Plaintiff could have attacked the guilty plea as involuntary by way of an application for post-conviction relief.  However, plaintiff has not provided the information required to assess whether or not the putative application raising such a claim was frivolous.  Further, assuming that plaintiff raised non-frivolous and legitimate post-conviction claims in his application, he still failed to establish prejudice or injury resulting from the defendants' actions. Plaintiff discovered that his pleading had not been received by the Cameron Parish Clerk of Court in June 2011; nevertheless,

---

[2] See La. Code Crim. P. art. 930.3 which provides the exclusive  grounds for post-conviction relief: "(1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana; (2) The Court exceeded its jurisdiction; (3) The conviction or sentence subjected him to double jeopardy; (4) The limitations on the institution of prosecution had expired; (5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or (6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana; (7) The results of DNA testing ... proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted."

he made no attempt to re-file the application. The reason given for this failure was that by June 2011 the time for seeking post-conviction relief had expired.  Under Louisiana law, applicants for post-conviction relief have a period of two years from the date of finality of judgment within which to file their application. See La. Code Crim.P. art 930.8.  Plaintiff pled guilty and was sentenced on March 24, 2009 and he did not appeal. [Doc. 9 and 9-1] Therefore, his judgment of conviction became final under Louisiana law when the 30 day period for filing an appeal expired (La. Code Crim.P. art 914, or on or about April 22, 2009. He had two years, or until April 22, 2011 to file his application. He claimed that he submitted it to prison authorities for mailing prior to that date. Clearly, once he discovered that the pleading had not reached its destination, he was obliged to re-submit the pleading and argue the applicability of the prison "mailbox rule."  The Louisiana Supreme Court has held that *pro se* pleadings may be considered filed as of the date that the pleadings are delivered to prison authorities for mailing. See *State of Louisiana ex rel. Egana v. State of Louisiana*, 2000-2351 (La. 9/22/2000), 771 So.2d 638, citing *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (A *pro se* prisoner's pleading may be considered filed "... the moment it is delivered to prison officials for forwarding to the clerk of the district court.") In order to demonstrate prejudice, plaintiff would have to show that once he learned that his pleading had not been filed, he at least attempted unsuccessfully to re-file the document. This he has not done and therefore, since he is unable to demonstrate injury or prejudice his access to courts claim must be dismissed.

### *Conclusion and Recommendation*

Therefore

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Monroe, Louisiana, October 25, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

11